IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTENERGY SOLUTIONS CORP. | | CASE NO.   5:12-CV-2948 |
| Plaintiff, | | JUDGE JOHN R. ADAMS |
| vs. | | |
| PAUL FLERICK | | **ORDER AND DECISION** |
| Defendant. | | |

This matter comes before the Court on Motion for a Preliminary Injunction filed by

Plaintiff FirstEnergy Solutions Corp.  The Court has been advised, has reviewed the parties'

motions and supporting documents, and has reviewed the applicable law.  Moreover, the Court

conducted a hearing, received testimony, and reviewed exhibits on December 18 and 19, 2012.

For the reasons that follow, the motion is GRANTED.

I.     **Facts**

Defendant, Paul Flerick, began employment with Plaintiff FirstEnergy Solutions on or

around November 4, 2009.  As the time of his hiring, Defendant and Plaintiff entered into an

employment agreement. The agreement contained a non-compete clause that read as follows:

ARTICLE IV
RESTRICTIVE COVENANTS
4.1 During the term of his employment with FirstEnergy
[Solutions] and for a period of twelve (12) months following the
termination of his employment for any reason, including without
limitation, termination by mutual agreement, Employee [Flerick]
expressly covenants and agrees that he will not, within the
following geographic region: Ohio, Michigan, Illinois,
Pennsylvania, New Jersey, Maryland, provide electric commodity

sales services at any time for himself or on behalf of any other person, firm, association or other entity:

(A) Participate or engage, directly or indirectly, in the business of selling, servicing, manufacturing and/or purchasing products, supplies or services of the kind, nature or description of those sold by Employee [Flerick] for FirstEnergy, except pursuant to his employment with FirstEnergy;

(B) Solicit, divert, take away or attempt to take away any of FirstEnergy's customers or the business or patronage of any such customers of FirstEnergy;

(C) Solicit, entice, lure, employ or endeavor to employ any of FirstEnergy's employees;

(D) Divulge to others or use for his own benefit any Confidential Information obtained during the course of his employment with FirstEnergy relative to sales, services, processes, methods, machines, manufacturers, compositions, ideas, improvements, patents, trademarks, or inventions belonging to or relating to the affairs of FirstEnergy or its subsidiaries, affiliates, parent or partners;

(E) Divulge to others or use to his own benefit any Trade Secrets belonging to FirstEnergy or its subsidiaries, affiliates, parent or partners obtained during the course of his employment or that he became aware of as a consequence of his employment.

On April 23, 2012, Defendant gave his notice of resignation to Plaintiff. His last day of employment with Plaintiff was on May 7, 2012. Soon thereafter, Defendant began employment with Reliant Energy Retail Services, LLC. In October of 2012, Plaintiff learned of Defendants employment with what it considered to be a direct competitor. Plaintiff filed the instant suit and requested a temporary restraining order. On December 5, 2012, after a hearing on the issue, this Court entered a temporary restraining order, limiting the covenant to the State of Illinois. The TRO expired on December 18, 2012. The Plaintiff filed the instant motion for preliminary injunction. The Court heard testimony on the motion on December 18 and December 19, 2012.

## II.     Law and Analysis

When determining whether to issue a temporary restraining order or a preliminary injunction, this Court considers the following four factors:

2

(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). This Court must balance the four factors while noting that none should be considered a prerequisite to the grant of injunctive relief. See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). Moreover, a plaintiff must present clear and convincing evidence in support of the four factors. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-68 (Ohio Ct. App. 2000).

### 1.   Likelihood of Success on the Merits:

The Ohio Supreme Court has explained that a "covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerach*, 42 Ohio St.2d 21, (1975) at paragraph 2 of the syllabus.   With regard to reasonableness,

> "Among the factors properly to be considered are: '(t)he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment. (Internal citations omitted.)  Id. at 547.

Analyzing these factors, the Court concludes that Plaintiff has providing clear and convincing evidence that the non-compete clause at issue is reasonable.  First the Court notes that the clause is limited in both time and space.  The one year time restriction has been repeatedly held to be reasonable.  See *Am. Logistics Group, Inc. v. Weinpert*, 2005 WL 2240987, at FN 6 (Ohio App, 8th Dist. 2005).  Further, the geographic region is limited to the area in which Defendant himself conducted  business while working for Plaintiff.

Additionally, the Court finds that Defendant possesses confidential information stemming from his prior employment. Testimony revealed that Defendant maintained his own "book" of clients, thus appearing to be the sole contact between the company and the customers.  The testimony further revealed that Defendant has specific knowledge of Plaintiff's pricing and sales strategy as well as its customer list, thus possessing confidential information and/or trade secrets. Defendant's testimony that he does have physical possession of documents containing this information does not alter the fact that the *knowledge* of this information is still well within Defendant's control.

The Court also concludes that this clause does not seek to eliminate merely fair competition.  Rather, the clause is very specific as to the time, place and manner in which the Defendant could violate the clause and does not restrict him from all competition.  In fact, Defendant himself testified that he had indeed contacted some of his former customers on behalf of his new employer.  This is the exact unfair competition the clause clearly seeks to eliminate. Thus, contrary to Defendant's assertions, Plaintiff seeks only to halt competition that would be inherently unfair, i.e., work that would be impossible to perform without Defendant utilizing information gaining during his prior employment with Plaintiff.

The Court concludes that the clause does not seek to stifle Defendant's inherent skill as a salesperson in either the gas or electric field.  The clause does not restrain Defendant from working in 44 other states, or in any other field.  Testimony revealed that Defendant's current employer also conducts business in Texas, a sales area not contained in the covenant.  As such, this clause does not bar Defendant's sole means of support.  With regard to Defendant's talent as a salesperson, although it is clear that he had been a salesperson for years prior to his employment with Plaintiff, it is also clear that Plaintiff spent significant time and resources to instruct Defendant in its particular method of sales and pricing. Thus, there is evidence that Defendant both had sales skills but also enhanced those skills through the resources provided by Plaintiff. Again, use of these resources against it are exactly what Plaintiff sought to restrict with the contract clause at issue.  Moreover, the forbidden employment here is not merely incidental to the main employment.

Finally, the Court does not find that the benefit to Plaintiff is disproportional to the detriment to Defendant.  The detriment to Defendant consists of solely limiting his work opportunities for a limited period of time in a limited geographic area.  As noted above, it does not even foreclose his opportunities with his current employer.  Similarly, Plaintiff's benefit is limited.  It halts only competition in a specific region, competition that would undoubtedly require Defendant to utilize confidential information.  Thus, the factors reviewed in their totality strongly support a conclusion that the clause is reasonable and enforceable.

Defendant, however, makes the alternative argument that even if the non-compete agreement is valid and enforceable it does not apply to him because he was "downsized" by FirstEnergy therefore negating the clause. This argument is without merit.  It is without question that Defendant voluntarily left employment with FirstEnergy.  Much of the testimony on this

issue centered on Defendant's alleged lackluster job performance.  Defendant asserted that he was effectively forced to resign because FirstEnergy reassigned him to a different sales group and reassigned several of his customers to other sales people.  This argument, however, does not support Defendant's contention that he was downsized.  Rather, it shows that FirstEnergy placed him on a performance improvement plan to aid his performance and was in the process of helping him increase his sales.  To find otherwise would effectively allow an employee to quit because he feared being fired for performance issues and then shirk the requirements of his contract.  This Court is not inclined to make such a leap.

As such, the clause is reasonable and the Court concludes that Plaintiff has shown by clear and convincing evidence the likelihood of success on the merits.

## 1.  Irreparable Injury

"[A]n employer who seeks an injunction to enforce a non-compete clause must not only establish the reasonableness of the non-compete clause at issue but must also show that the employer is likely to suffer irreparable harm as a result of the employee's breach of that clause. *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267, 270–271."  *Brentlinger Enterprise v. Curran*, 752 N.E.2d 994, 999 (Ohio App. 999).

Notably, Defendant testified that he had contacted at least one former customer on behalf of his new employer.  While there is some debate as to whether Defendant believed whether that customer fit the definition of "customer" pursuant to the non-compete agreement, it is clear that despite a clear restraint on contacting his former customers, he contacted them anyway.  Moreover, any assertion that this entity did not qualify as a "customer,' relies specifically on knowledge that Defendant gained during his employment with Plaintiff – the precise knowledge that the non-compete is designed to protect.  There is no dispute that Defendant was clearly

6

aware of the non-compete clause and that he had in fact discussed the clause at length with

FirstEnergy prior to accepting employment. When he left his position at FirstEnergy, when

reminded about the non-compete agreement, he responded that it was "not a concern." As such,

not only is there a *threat* of irreparable harm from Defendant's violation of the non-compete

clause, it appears that the exact harm contemplated by the agreement has already occurred. The

Court expressed its concern with Defendant's testimony wherein he testified to the non-compete

clause. As fully set forth during arguments, Defendant specifically misread the agreement to his

advantage by skipping over portions of the agreement that would prohibit him from attempting to

violate the agreement. The Court concludes that Defendant was clearly aware of his obligations

and that he was violating those obligations.

Even if this Court could disregard Defendant's contact with former customers, the Court

would conclude that the rule against inevitable disclosures would apply in this case.

> The rule against inevitable disclosure "holds that a threat of harm
> warranting injunctive relief exists when an employee with
> specialized knowledge commences employment with a
> competitor." *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*,
> Cuyahoga App. No. 90822, 2008-Ohio-5470, 2008 WL 4681825,
> at ¶ 27. "[T]his doctrine is applied when a former employer seeks
> 'injunctive' relief when a former employee begins work with a
> competitor while the noncompetition clause has not expired."
> (Emphasis added.) Id. Cf. *Dexxon Digital Storage, Inc. v.
> Haenszel,* 161 Ohio App.3d 747, 2005-Ohio-3187, 832 N.E.2d 62,
> discretionary appeal and cross-appeal not allowed, 107 Ohio St.3d
> 1682, 2005-Ohio-6480, 839 N.E.2d 403 (applying the "inevitable
> disclosure" doctrine to enjoin a former employee in the absence of
> a noncompetition agreement).

*Hydrofarm v. Orendorff,* 905 N.E.2d 658, 663 (2008). This rule has been justified because "the

courts have recognized that 'it is very difficult for the human mind to compartmentalize and

selectively suppress information once learned, no matter how well intentioned the effort may be

to do so.'" *Litigation Mgt., Inc. v. Bourgeois*, 2011 WL 2270553, at \*7 (Ohio App. 8[th] Dist.,

2011) quoting *FTC v. Exxon Corp.* (D.C.Cir.1980), 636 F.2d 1336, 1350.  At argument, Defendant argued that in the 8 months since Defendant left FirstEnergy, there has be no actual harm.  This argument ignores the fact that Defendant testified that he contacted a major customer.  Further, the Defendant argues that FirstEnergy somehow sat on its rights to enforce this covenant by not filing suit until they discovered the breach in October.  Defendant argues that FirstEnergy had a duty to mitigate its damages and act immediately.  These arguments cannot coexist.  Had FirstEnergy known about the breach in May and immediately acted, there would have been no actual harm.  As such, a TRO or preliminary injunction could not have been granted at that time, by Defendant's argument.  Lastly, Defendant's argument ignores the need for an injunction, which is only available where there is no other adequate remedy at law.  If the Court required Plaintiff to show *actual* concrete harm, damages would be calculable and thus there would be no need for a preliminary injunction.

Finally, the Court notes that there was no testimony that Defendant would be irreparably harmed by enforcement of the non-compete.  He did not bring forth any evidence that he would be restrained from working for his current employers in perhaps a different market, or that he would be unable to find work elsewhere.  There was simply no evidence presented on the behalf of Defendant that would tip the balance of irreparable harm to Defendant's favor.

Accordingly, the Court concludes that there is clear and convincing evidence that Plaintiff is likely to suffer irreparable harm.

### 2.  **Harm to Others**

This prong does not weigh heavily in favor of denying the Preliminary Injunction. Although Defendant has testified that he has a family including four children, there was no further testimony as to whether he was the sole provider for his family.  Regardless, a

preliminary injunction would not preclude Defendant from working for his current employer. Rather, it would restrict him from working in the six states defined in the agreement for the remainder of the 12 month term.  Further, testimony revealed that Defendant was well aware of the non-compete agreement when he accepted employment with FirstEnergy and was well aware of the non-compete agreement when he left employment.  Defendant took a position that appears to be in direction violation of the non-compete agreement, thus taking the risk that FirstEnergy would seek to enforce the agreement.

Additionally, testimony demonstrated that Defendant's new employer was made aware of his non-compete prior to beginning his new employment.  As such, the new employer similarly was well aware of the risks involving in hiring Defendant and chose to employ him in the face of those risks.

As such, there is insufficient evidence of harm to others to warrant denying the injunction.

### 3.  Public Interest

The Court concludes that the public interest is best served by granting the preliminary injunction in this case.

> Clearly, "the public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *National Interstate Ins. Co. v. Perro*, 934 F.Supp. 883, 891 (N.D.Ohio 1996). Moreover, in, "it is well-established that the trade secret policies in Ohio are to maintain the standards of commercial ethics and the encouragement of invention, as well as the protection of the substantial investment of employers in their proprietary information." *Valco Cincinnati, Inc.*, 492 N.E.2d at 820 (citation omitted). This injunction preserves the public's interest in fair competition in business, and serves the public interest.

*ALTA Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 786 (S.D.Ohio 1999) As detailed above, the Court finds that Plaintiff has put forth clear and convincing evidence, at this initial stage of the

litigation, that the covenant is reasonable.  The public interest, therefore, is served by its enforcement.

### III.    Conclusion

After a review of the briefing and hearing on this issue, the Court has balanced the factors above and concludes that a preliminary injunction is warranted in this Case.  As such, the Plaintiff's motion is granted.  Defendant is hereby enjoined from violating his non-compete clause with FirstEnergy for the remainder of the 12 months as stated in the clause.  Because Defendant left FirstEnergy in May of 2012, the clause is enforceable until May of 2013.   The Court notes that Plaintiff requested an injunction for 12 months from the date of this Order. However, as Defendant has adamantly denied using any confidential information or trade secrets he gained from FirstEnergy, the Court does not conclude that it is necessary to extend the terms of the non-compete past the time frame initially contemplated by the parties.  Further, Defendant is enjoined from conducting the restricted business in the 6 states as listed in the agreement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Order is effective upon Plaintiff first giving security in the sum of $45,000 for the payment of such costs and damages that may be incurred or suffered by Defendant if it is found that they have been wrongfully enjoined or restrained, such bond to be approved by the Court or by the Clerk of Courts.

IT IS SO ORDERED.

Date: 12.20.12

/s/ John R. Adams
Judge John R. Adams
U.S. District Court Judge

10